GEER, Judge.
*86 Defendant, the University of North Carolina at Chapel Hill, appeals the superior court's denial of its motion to dismiss plaintiff Jillian Murray's complaint. Although acknowledging that this appeal is interlocutory, defendant argues that it is entitled to appeal because the trial court denied its motion to dismiss on sovereign immunity grounds.
*87 However, we are bound by Can Am S., LLC v. State, 234 N.C.App. 119, 122, 759 S.E.2d 304, 307, disc. review denied, 367 N.C. 791, 766 S.E.2d 624 (2014), in which this Court, after surveying the controlling authority, held that when a defendant raises the issue of sovereign immunity under Rule 12(b)(1) of the Rules of Civil Procedure, a denial of that motion is not immediately appealable. Since the only sovereign immunity argument preserved below raised the issue under Rule 12(b)(1), this Court does not have jurisdiction over this appeal. Although defendant also argues that this case is moot, defendant has not made any argument that this Court has jurisdiction over that issue in the absence of a proper appeal of the sovereign immunity issue. We, therefore, dismiss the appeal.
Facts
Plaintiff's complaint alleges the following facts. On 12 January 2013, plaintiff, a student at defendant university, was violently *533 sexually assaulted by a fellow classmate. Plaintiff emailed Dean Blackburn, the Associate Dean of Students for defendant, and requested information regarding the rights of sexual assault victims. Dean Blackburn failed to respond to plaintiff's inquiry for 20 days. On 4 February 2013, Dean Blackburn wrote to plaintiff, stating that her request "simply got lost in [his] inbox" and indicated that Desiree Rieckenberg, the Associate Dean and Student Complaint Coordinator, would contact her in the next 24 hours.
On 22 February 2013, plaintiff was allowed to meet with Dean Rieckenberg, who informed plaintiff that defendant's Title IX grievance system was in a "state of transition" and that she would "tell someone appropriate and get back in touch" with her. Dean Rieckenberg never provided plaintiff with defendant's sexual misconduct policy, never advised her of her rights under the policy, and never contacted her again. Plaintiff alleged that she became despondent and depressed due to the trauma from the assault and defendant's lack of response to her allegations and was unable to complete her spring semester.
Around January 2014, plaintiff told her parents about the sexual assault and the lack of response from defendant when she tried to report it. Plaintiff and her parents reached out to officials of defendant, but were informed that defendant did not regard her reports as "a formal complaint" under its Title IX policy. On 29 January 2014, plaintiff wrote to E.W. Quimbaya-Winship[1] that she was "a victim of sexual assault"
*88 and that she "would like to make a formal report" regarding the assault. Plaintiff accepted Mr. Quimbaya-Winship's offer to make a complaint over the phone on 31 January 2014.
At the time of plaintiff's complaint, defendant had in place a sexual misconduct policy titled defendant's "Policy on Prohibited Harassment, Including Sexual Misconduct, and Discrimination." The policy provided that defendant would "promptly investigate and prepare a confidential Investigation Report within forty-five (45) calendar days of receiving the complaint, unless an extension of time is necessary in order to conduct a thorough and accurate investigation." If such extension of time was found to be necessary, the policy stated that defendant would provide the parties with written notification of the revised deadline for the report's completion.
On 21 February 2014, plaintiff and her parents met with officials of defendant and spoke with Title IX investigators, including Jayne Grandes and Kim Dixon. Investigator Grandes was assigned to investigate plaintiff's complaint on 5 March 2014, and Investigator Dixon was assigned to co-investigate it on 24 March 2014. Investigator Grandes emailed plaintiff on 17 April 2014, 76 days after plaintiff filed her 31 January 2014 complaint, and notified her that the date for completion of the investigation had been extended to 19 May 2014, 108 days after the date plaintiff filed her complaint. Investigators Grandes and Dixon submitted their report to defendant's Title IX coordinator on 19 May 2014. The report found "good cause to proceed to Informal or Formal Resolution of the complaint, as outlined in Sections IV and V of Appendix C to the Policy."
On 11 July 2014, Professor Robert P. Joyce emailed plaintiff to inform her that he had appointed himself chair of her grievance procedure and had appointed Clair McLaughlin, an undergraduate student with little Title IX training, no legal training, and only intermittent internet access because she was spending the summer in the Philippines, as plaintiff's "advisor." In addition, Professor Joyce informed plaintiff that pursuant to "Section V.E.2 of the Policy" plaintiff was entitled to "have a support person present in addition to [the] appointed advisor[,]" and the policy stated "[t]hat support person may be an attorney." At that time, section V.E.2 of Appendix C of the policy stated: "[t]he support person, who may be legal counsel, may privately consult with and advise a party but may not question witnesses or otherwise directly participate in the proceedings."
On 24 July 2014, Bernard Burk, the new panel chair, emailed plaintiff a document titled "Notice of Procedures Governing Student Grievance *89 Hearing," which applied only *534 to plaintiff's specific grievance procedure. The document stated that an attorney could be present only as a " Support Person" and would not be entitled to receive direct communications on behalf of the student he represents. It also stated:
your Support Person may participate fully in the proceedings in any way that you yourself may participate. Thus your Support Person may, if you wish, address the Panel and question witnesses other than the opposing party (under the Policy, the parties may be questioned only by the Panel).
In addition, it explained:
You are responsible for communicating with your attorney or non-attorney support person ("Support Person").... If contacted by your Support Person about matters related to the hearing, I will send my response to you (with a copy to the other party) and request that you communicate my response to your Support Person.
On 29 July 2014, Henry C. Turner notified defendant that he represented plaintiff in the grievance procedure, asked that he be appointed as her attorney in place of her student advisor, and requested that all correspondence be directed to him. Mr. Burk sent a response to plaintiff on the same day, without copying Mr. Turner, stating that "it is the practice under the University's Title IX Policy for the Panel Chair to communicate with the parties, and, if requested, their Advisors. Panel Chairs do not communicate directly with any attorney ...[.]" On 7 August 2014, Mr. Turner was made aware that plaintiff's grievance proceeding was scheduled for 22 August 2014, after his requests to participate fully in the proceeding were rejected, and he was not informed of the place of the proceeding.
On 20 August 2014, plaintiff filed a verified complaint against defendant, seeking a declaratory judgment that defendant's sexual assault grievance procedure was unlawful. She requested a temporary restraining order and preliminary and permanent injunctive relief.
In her complaint, plaintiff contended that defendant's sexual misconduct policy violated N.C. Gen.Stat. § 116-40.11(a), stating:
"[a]ny student enrolled at a constituent institution who is accused of a violation of the disciplinary or conduct rules of the constituent institution shall have the right to be represented, at the student's expense, by a licensed attorney *90 or nonattorney advocate who may fully participate during any disciplinary procedure or other procedure adopted and used by the constituent institution regarding the alleged violation."
Further, plaintiff cited to Title IX requirements for hearings on sexual assault and harassment, in which the U.S. Department of Education's Office of Civil Rights stated: " '[w]hile OCR does not require schools to permit parties to have lawyers at any stage of the proceedings, if a school chooses to allow the parties to have their lawyers participate in the proceedings, it must do so equally for both parties. ' "
Defendant responded to plaintiff's complaint by filing a motion to dismiss on 19 September 2014, in which defendant asserted that pursuant to Rules 12(b)(1) and/or 12(b)(6) of the Rules of Civil Procedure, plaintiff's complaint should be dismissed for "mootness, lack of standing, lack of subject matter jurisdiction, and failure to state a claim upon which relief may be granted." In its motion, defendant argued that "[t]he questions originally in controversy between the parties are no longer at issue" and that "[w]ith no justiciable controversy ripe for determination presented in Plaintiff's Complaint, the issues raised in the Complaint are moot." Further, defendant claimed that "Plaintiff lack[ed] standing to bring the present case." Finally, defendant asserted that "[t]he Court lacks subject matter jurisdiction over Plaintiff's claims" and that "Plaintiff has failed to state a claim upon which relief may be granted."
Plaintiff filed a brief in opposition to defendant's motion to dismiss on 13 October 2014. In her brief, plaintiff asserted that defendant's motion should be denied because plaintiff's Title IX sexual assault grievance had not " 'concluded.' " Plaintiff explained that defendant filed its motion to dismiss prior to the expiration of the deadline for *535 plaintiff's sexual assailant to appeal the findings of plaintiff's student grievance hearing, so the issues in the case were not moot and should not be dismissed. Additionally, plaintiff argued that even if the cause of action became moot, the case should nevertheless continue to be heard under the "public interest exception" to the mootness doctrine.
The trial court held a hearing on defendant's motion to dismiss on 15 October 2014 in Orange County Superior Court. Although defendant's motion to dismiss had made no mention of sovereign immunity and was solely based on Rules 12(b)(1) and 12(b)(6), defendant argued at the hearing that the complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(2) based on the doctrine of sovereign immunity.
*91 On 6 November 2014, the trial court entered an order denying defendant's motion to dismiss. In the order, the trial court stated:
THIS MATTER CAME ON FOR A HEARING before the undersigned Superior Court Judge Presiding during the 20 August 2014 Civil Session of Orange County Superior Court upon Defendant's Motion to Dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure. After considering the arguments of counsel, the Complaint, the Motion, and the briefs and other submissions of the parties, the Court finds that it possesses subject matter jurisdiction over this action and that the Plaintiff's complaint has made allegations sufficient to state a claim upon which relief may be granted under some legal theory.
Defendant appealed the order to this Court.
Discussion
We must first address whether this Court has jurisdiction to hear this appeal from the trial court's denial of defendant's motion to dismiss. "Typically, the denial of a motion to dismiss is not immediately appealable to this Court because it is interlocutory in nature." Reid v. Cole, 187 N.C.App. 261, 263, 652 S.E.2d 718, 719 (2007). " 'An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.' " Britt v. Cusick, 231 N.C.App. 528, 530-31, 753 S.E.2d 351, 353 (2014) (quoting Veazey v. City of Durham, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ).
Defendant contends, however, that this appeal is properly before the Court because the trial court rejected defendant's claim that the action was barred by sovereign immunity. Defendant argues that the order therefore affects a substantial right that would be lost in the absence of an immediate appeal. See N.C. Gen.Stat. § 1-277(a) (2015) (authorizing interlocutory appeal of order that "affects a substantial right"). In addressing defendant's arguments, we are bound by Can Am.
In Can Am, the defendants moved to dismiss on sovereign immunity grounds under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(2) for lack of personal jurisdiction, "but notably not Rule 12(b)(6)...." 234 N.C.App. at 122, 759 S.E.2d at 307. Although the defendants had moved to dismiss for failure to state a claim for relief under Rule 12(b)(6), they based their Rule 12(b)(6) motion on the plaintiff's *92 failure to adequately plead an actual controversy and not on the sovereign immunity doctrine. Id. at 123-24, 759 S.E.2d at 308.
This Court held in Can Am that "[h]ad defendants moved to dismiss based on the defense of sovereign immunity pursuant to Rule 12(b)(6), we would be bound by the longstanding rule that the denial of such a motion affects a substantial right and is immediately appealable under section 1-277(a)." Id. at 122, 759 S.E.2d at 307. See also Green v. Kearney, 203 N.C.App. 260, 266, 690 S.E.2d 755, 761 (2010) ("This Court has held that a denial of a Rule 12(b)(6) motion to dismiss on the basis of sovereign immunity affects a substantial right and is immediately appealable."), aff'd per curiam, 367 N.C. 113, 748 S.E.2d 143 (2013). However, since the defendants had only based their sovereign immunity defense on a lack of either subject matter jurisdiction under Rule 12(b)(1) or personal jurisdiction under Rule 12(b)(2), that longstanding rule was inapplicable. Can Am, 234 N.C.App. at 122, 759 S.E.2d at 307.
*536 The Court next concluded that the defendants' Rule 12(b)(1) motion could not justify an interlocutory appeal because "[a] denial of a Rule 12(b)(1) motion based on sovereign immunity does not affect a substantial right [and] is therefore not immediately appealable under section 1-277(a)." Id. at 122, 759 S.E.2d at 307. See also Green, 203 N.C.App. at 265-66, 690 S.E.2d at 760 ("[T]his Court has declined to address interlocutory appeals of a lower court's denial of a Rule 12(b)(1) motion to dismiss despite the movant's reliance upon the doctrine of sovereign immunity."); Meherrin Indian Tribe v. Lewis, 197 N.C.App. 380, 385, 677 S.E.2d 203, 207 (2009) (holding "defendants' appeal from the denial of their Rule 12(b)(1) motion based on sovereign immunity is neither immediately appealable pursuant to N.C. Gen.Stat. § 1-277(b), nor affects a substantial right.").
In Can Am, this Court concluded its analysis of the jurisdictional issue by addressing Rule 12(b)(2) motions invoking the sovereign immunity doctrine. This Court pointed out that "beginning with Sides v. Hospital, 22 N.C.App. 117, 205 S.E.2d 784 (1974), mod. on other grounds, 287 N.C. 14, 213 S.E.2d 297 (1975), this Court has consistently held that: (1) the defense of sovereign immunity presents a question of personal, not subject matter, jurisdiction, and (2) denial of Rule 12(b)(2) motions premised on sovereign immunity are sufficient to trigger immediate appeal under section 1-277(b)." 234 N.C.App. at 124, 759 S.E.2d at 308.
As a result, the Court concluded in Can Am that it could consider the merits of the defendants' Rule 12(b)(2) motion to dismiss, concluding "[a]s has been held consistently by this Court, [that] denial of a *93 Rule 12(b)(2) motion premised on sovereign immunity constitutes an adverse ruling on personal jurisdiction and is therefore immediately appealable under section 1-277(b)." Id. at 125, 759 S.E.2d at 308. See also Data Gen. Corp. v. Cnty. of Durham, 143 N.C.App. 97, 100, 545 S.E.2d 243, 245-46 (2001) ("[T]his Court has held that an appeal of a motion to dismiss based on sovereign immunity presents a question of personal jurisdiction rather than subject matter jurisdiction, and is therefore immediately appealable.").
In this case, as in Cam Am, although defendant's motion to dismiss referred to Rule 12(b)(6) as well as Rule 12(b)(1), the motion did not mention sovereign immunity. During the oral argument, where defendant raised the sovereign immunity doctrine for the first time, defendant relied only on Rules 12(b)(1) and 12(b)(2) in arguing that the complaint was barred by sovereign immunity and did not rely upon Rule 12(b)(6).[2] As Can Am emphasizes, to the extent that defendant relied on Rule 12(b)(1) in moving to dismiss on sovereign immunity grounds, that motion does not support an interlocutory appeal. 234 N.C.App. at 124, 759 S.E.2d at 308. Further, since neither defendant's written motion nor its oral argument at the hearing relied on Rule 12(b)(6) in connection with the sovereign immunity defense, the case law authorizing interlocutory appeals for denial of a Rule 12(b)(6) motion based on sovereign immunity does not apply.
With respect to Rule 12(b)(2), defendant did not assert a sovereign immunity defense based on Rule 12(b)(2) until the hearing, when defendant argued that it should not matter whether its sovereign immunity argument was brought under Rule 12(b)(1) or under Rule 12(b)(2). Even though defendant mentioned Rule 12(b)(2) in its oral argument, the trial court's order referred only to Rules 12(b)(1) and 12(b)(6) and made no reference to Rule 12(b)(2). Because defendant did not include Rule 12(b)(2) in its motion, the trial court reasonably confined its order to the bases asserted in the motion: Rules 12(b)(1) and 12(b)(6). See N.C.R. Civ. P. 7(b)(1) (providing that motion "shall be made in writing, shall *94 state with particularity the grounds *537 therefor, and shall set forth the relief or order sought").
In addition, Rule 10(a)(1) of the Rules of Appellate Procedure provides that in order for a party to properly preserve an issue for appeal, the party not only must have raised the issue below, but "[i]t is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion." Since defendant did not take any action to obtain a ruling on its oral Rule 12(b)(2) motion, defendant did not preserve for appellate review the question whether the trial court erred in not applying the sovereign immunity doctrine under Rule 12(b)(2).
Notably, defendant does not argue on appeal that the trial court erred in failing to address Rule 12(b)(2) and, for that reason as well, the issue regarding denial of a motion to dismiss under Rule 12(b)(2) is not properly before us. It is well established that "[i]t is not the role of the appellate courts ... to create an appeal for an appellant." Viar v. N.C. Dep't of Transp., 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005).
Accordingly, since our role is simply to review the actions of the court below, we find no basis for concluding that this Court has jurisdiction over the appeal pursuant to Rule 12(b)(2). Because we do not have jurisdiction over defendant's appeal, we are required to dismiss it without reaching the merits of defendant's underlying sovereign immunity argument. See Casper v. Chatham Cnty., 186 N.C.App. 456, 459-60, 651 S.E.2d 299, 302 (2007) (" 'If a court finds at any stage of the proceedings that it lacks jurisdiction over the subject matter of a case, it must dismiss the case for want of jurisdiction.' " (quoting Sarda v. City/Cnty. of Durham Bd. of Adjustment, 156 N.C.App. 213, 215, 575 S.E.2d 829, 831 (2003) )).
Defendant also contends on appeal that the trial court erred in denying its motion to dismiss on the grounds of mootness. Defendant did not, however, in its statement of the grounds for appellate review, make any argument that the trial court's denial of its motion to dismiss on the grounds of mootness affects a substantial right. And, it is not the role of this Court to find a justification for exercising jurisdiction. See Jeffreys v. Raleigh Oaks Joint Venture, 115 N.C.App. 377, 380, 444 S.E.2d 252, 254 (1994) ("It is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order; instead, the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits.").
*95 Regardless, this Court has held that "mootness is properly raised through a motion under ... Rule 12(b)(1)" as an issue of subject matter jurisdiction. Yeager v. Yeager, 228 N.C.App. 562, 565, 746 S.E.2d 427, 430 (2013). However, it is well established in North Carolina that "[a] trial judge's order denying a motion to dismiss for lack of subject matter jurisdiction is interlocutory and not immediately appealable." Shaver v. N.C. Monroe Constr. Co., 54 N.C.App. 486, 487, 283 S.E.2d 526, 527 (1981). Therefore, we have no jurisdiction over the mootness issue and cannot address it.[3] Accordingly, we dismiss this appeal and remand for further proceedings.
DISMISSED AND REMANDED.
Judge BRYANT concurs.
Judge TYSON dissents in a separate opinion.

No job title for this individual is stated in plaintiff's complaint.

The dissent points to the transcript as showing that defendant did argue for dismissal on sovereign immunity. To the contrary, the case referenced by defense counsel in the quotation included in the dissent, held that a motion to dismiss based on sovereign immunity falls under Rule 12(b)(1) or 12(b)(2) : "[T]he parties' briefs address the issue of sovereign immunity. A motion to dismiss based on sovereign immunity is a jurisdictional issue; whether sovereign immunity is grounded in a lack of subject matter jurisdiction or personal jurisdiction is unsettled in North Carolina." M Series Rebuild, LLC v. Town of Mount Pleasant, Inc., 222 N.C.App. 59, 62, 730 S.E.2d 254, 257 (2012) (citing only cases involving 12(b)(1) and 12(b)(2)).

In addition, defendant has filed a motion to supplement the record and take judicial notice of facts relating solely to the issue of mootness. Since that issue is not properly before us, we deny that motion.